**2013-1036**

In The

# United States Court of Appeals

For The Federal Circuit

## CBT FLINT PARTNERS, LLC,

*Plaintiff – Appellant*,

v.

## RETURN PATH, INC.,

*Defendant – Appellee,*

and

## CISCO IRONPORT SYSTEMS, LLC,

*Defendant – Appellee.*

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
IN CASE NO. 07-CV-1822, JUDGE THOMAS W. THRASH, JR.**

———————————

**BRIEF OF DEFENDANTS–APPELLEES
CISCO IRONPORT SYSTEMS, LLC AND
RETURN PATH, INC.**

———————————

**L. Norwood Jameson**
**Matthew C. Gaudet**
**John R. Gibson**
**DUANE MORRIS LLP**
**1075 Peachtree Street, NE, Suite 2000**
**Atlanta, Georgia 30309**
**(404) 253-6900 (Telephone)**
**(404) 253-6901 (Facsimile)**

**Kenneth L. Bressler**
**BLANK ROME LLP**
**405 Lexington Avenue**
**New York, New York 10174**
**(212) 885-5203 (Telephone)**
**(917) 332-3740 (Facsimile)**

*Counsel for Defendant-Appellee*
  *Cisco IronPort Systems, LLC*

*Counsel for Defendant-Appellee*
  *Return Path, Inc.*

*Dated: April 11, 2013*

# <u>CERTIFICATE OF INTEREST</u>

Counsel for the appellee <u>Cisco IronPort Systems, LLC</u> certifies the following:

1.     The full name of every party or amicus represented by me is:

<u>Cisco IronPort Systems, LLC</u>

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

<u>None</u>

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

<u>Cisco Systems, Inc.</u>

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

  A.     <u>Attorneys Expected to Appear in This Court on Behalf of Cisco IronPort, LLC</u>:

**L. Norwood Jameson**
**Matthew C. Gaudet**
**John R. Gibson**
Duane Morris LLP
1075 Peachtree Street NE, Suite 2000
Atlanta, GA 30309
Phone: (404) 253-6900
Fax: (404) 253-6901

  B.     <u>Attorneys That Appeared on Behalf of Cisco IronPort, LLC in the Trial Court</u>:

**L. Norwood Jameson**
**Matthew C. Gaudet**

**Matthew S. Yungwirth**
**John R. Gibson**
Duane Morris LLP
1075 Peachtree Street NE, Suite 2000
Atlanta, GA 30309
Phone: (404) 253-6900
Fax: (404) 253-6901

Counsel for the appellee <u>Return Path, Inc.</u> certifies the following:

1.    The full name of every party or amicus represented by me is:

    <u>Return Path, Inc.</u>

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    <u>None</u>

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    <u>None</u>

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

**Peter Weissman**
**Victor Wigman**
Blank Rome LLP
600 New Hampshire Ave NW
Washington, DC 20037

**Kenneth L. Bresler**
Blank Rome LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208

**Gail Podoslky**
**James Jay Wolfson**
Carlton Fields, PA – Atlanta
One Atlantic Center, Suite 3000
1201 W. Peachtree St.
Atlanta, GA 30309

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF CONTENTS........................................................................ iii

TABLE OF AUTHORITIES ...................................................................v

STATEMENT OF RELATED CASES ...................................................1

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF THE ISSUES.............................................................1

STATEMENT OF THE CASE.................................................................2

STATEMENT OF FACTS .......................................................................2

     A.    Before Taxing Costs, The District Court Found That CBT Requested, "In Effect, Every Document in the Company"...................3

     B.    GGO's Efforts Are The "21st Century Equivalent Of Making Copies" .......................................................................................7

     C.    Procedural History.................................................................9

          1.    The District Court Held That Cisco Was Entitled To Recover The Requested E-Discovery Costs Following The First Summary Judgment Ruling.........................................9

          2.    Following Remand And The Grant Of A New Summary Judgment, The District Court Affirmed Its Earlier Decision Regarding Costs.......................................................11

SUMMARY OF ARGUMENT ..............................................................12

STANDARD OF REVIEW ....................................................................17

ARGUMENT ..................................................................................................18

I.    Defendants Are Entitled To Recover Their E-Discovery Costs .........18

    A.    The District Court Has The Statutory Authority To Award The Specific Costs At Issue In This Appeal .................20

        1.    The 2008 Statutory Amendments Confirm That Costs Incurred In Making Copies Of Electronically Stored Information Are Recoverable.............................21

        2.    The Specific Services At Issue Were For The Making Of The Digital Duplicates Of Defendants' Electronic Documents......................................................26

    B.    A Paper Production Would Have Resulted In Costs In Excess Of $1 Million ...............................................................32

II.    Return Path Is Entitled To Recover Those Costs Associated With Prior Art Searching....................................................................37

CONCLUSION .............................................................................................38

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allen v. U.S. Steel Corp.*,
    665 F.2d 689 (11th Cir. 1982) ......................................................28

*Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*,
    249 F.3d 1293 (11th Cir. 2001) ...................................................18

*BDT Prods., Inc. v. Lexmark Int'l, Inc.*,
    405 F.3d 415 (6th Cir. 2005) .................................................23, 29

*Cargill Inc. v. Progressive Dairy Solutions, Inc.*,
    No. CV-F-07-0349-LJO-SMS,
    2008 WL 5135826 (E.D. Cal. Dec. 8, 2008)....................................8

*CBT Flint Partners, LLC v. Return Path, Inc.*,
    654 F.3d 1353 (Fed. Cir. 2011) .....................................................1

*Chenault v. Dorel Indus., Inc.*,
    No. A-08-CA-354-SS,
    2010 WL 3064007 (W.D. Tex. Aug. 2, 2010) .................17, 25, 35

*Durden v. Citicorp Trust Bank, FSB*,
    No. 3:07-cv-974-J-34JRK,
    2010 WL 2105921 (M.D. Fla. Apr. 26, 2010) .............................28

*Gilchrist v. Bolger*,
    733 F.2d 1551 (11th Cir. 1984) .............................................18, 37

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ...........................................13, 31, 36

*In re Online DVD Rental Antitrust Litig.*,
    No. M 09-2029 PJH,
    2012 WL 1414111 (N.D. Cal. Apr. 20, 2012)...............................20

*In re Ricoh Co.*, *Ltd. Patent Litig.*,
No. C 03-2289 JW (N.D. Cal. Sept. 20, 2010).............................................24

*In re Ricoh Co.*, *Ltd. Patent Litig.*,
No. 03-02289,
2012 WL (N.D. Cal. Apr. 26, 2012)............................................................36

*In re Ricoh Co.*, *Ltd. Patent Litig.*,
661 F.3d 1361 (Fed. Cir. 2011) ............................................................*passim*

*Jardin v. DATAllegro, Inc.*,
No. 08-CV-1462-IEG (WVG),
2011 WL 4835742 (S.D. Cal. Oct. 12, 2011)......................................... 27-28

*Lockheed Martin Idaho Techs. Co. v.*
*Lockheed Martin Advanced Envtl. Sys.*, *Inc.*,
No. CV-98-316-E-BLW,
2006 WL 2095876 (D. Idaho July 27, 2006)..................................................37

*Manor Healthcare Corp. v. Lomelo*,
929 F.2d 633 (11th Cir. 1991) ......................................................................18

*Maris Distrib. Co. v. Anheuser-Busch*, *Inc.*,
302 F.3d 1207 (11th Cir. 2002) ....................................................................17

*Marx v. Gen. Revenue Corp.*,
133 S. Ct. 1166 (2013)..................................................................................18

*Neutrino Dev. Corp. v. Sonosite*, *Inc.*,
Civil Action No. H-01-2484,
2007 WL 998636 (S.D. Tex. Mar. 30, 2007) ......................................... 35, 37

*Parrish v. Manatt*, *Phelps & Phillips*, *LLP*,
No. C 10-03200 WHA,
2011 WL 1362112 (N.D. Cal. Apr. 11, 2011)................................................25

*Petroliam Nasional Berhad v. GoDaddy.com*, *Inc.*,
No. C 09-5939 PJH,
2012 WL 1610979 (N.D. Cal. May 8, 2012)......................................... 31-32

*Plantronics, Inc. v. Aliph, Inc.*,
 No. C 09-01714 WHA (LB),
 2012 WL 6761576 (N.D. Cal. Oct. 23, 2012) ........................................20, 29

*Race Tires America, Inc. v. Hoosier Racing Tire Corp.*,
 674 F.3d 158 (3d Cir. 2012) ........................................29, 30, 31, 32

*Rundus v. City of Dallas*,
 No. 3-06-CV-1823-BD,
 2009 WL 3614519 (N.D. Tex. Nov. 2, 2009) ..............................................21

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
 132 S. Ct. 1997 (2012) ....................................................................36

*Tibble v. Edison Int'l*,
 No. CV 07-5359 SVW (AGRx),
 2011 WL 3759927 (C.D. Cal. Aug. 22, 2011) ..............................................25

*U.S. Equal Emp't Opportunity Comm'n v. W&O, Inc.*,
 213 F.3d 600 (11th Cir. 2000) ..................................................................27

## **STATUTES**

19 U.S.C. § 1920(6) ........................................................................36

28 U.S.C. § 1920 ................................................................*passim*

28 U.S.C. § 1920(4) ............................................................*passim*

## **RULES**

Fed. R. Civ. P. 36 ............................................................................1

Fed. R. Civ. P. 54(d) ......................................................................18

Fed. R. Civ. P. 54(d)(1) ..............................................................1, 18

## **OTHER AUTHORITIES**

154 Cong. Rec. H10270 (daily ed. Sept. 27, 2008) ................................................22

154 Cong. Rec. S9897 (daily ed. Sept. 27, 2008) ............................................19, 22

Pub. L. No. 110-406 § 6(2) .......................................................................................22

Ronni Solomon and Andrew H. Walcoff, *E-Discovery Cost-Shifting*,
The Metropolitan Corporate Counsel, Oct. 2011, *available at*
http://www.kslaw.com/imageserver/KSPublic/library/publication/
2011articles/10-11MCCSolomonWalcoff.pdf........................................................25

## STATEMENT OF RELATED CASES

This appeal is related to *CBT Flint Partners*, *LLC v. Return Path*, *Inc.*, No. 2012-1460.  On April 11, 2013, pursuant to Fed. Cir. R. 36, the Court issued a per curiam affirmance of the district court's grant of summary judgment of non-infringement to Defendants.  The panel consisted of Judges Lourie, Bryson, and Prost.

This Court also previously heard and decided one appeal in this civil action. *CBT Flint Partners*, *LLC v. Return Path*, *Inc.*, 654 F.3d 1353 (Fed. Cir. Aug. 10, 2011) (Nos. 2010-1202, -1203).  The panel consisted of Judges Lourie (writing), Bryson, and Linn.

## JURISDICTIONAL STATEMENT

Defendants concur with the Jurisdictional Statement in CBT's Principal Brief.

## STATEMENT OF THE ISSUES

The district court's affirmance of the clerk's taxation of costs in favor of Defendants, pursuant to Federal Rule of Civil Procedure 54(d)(1), presents two issues for this Court to determine:

1.     Whether the district court abused its discretion in determining that, under the facts of this case, the specific costs sought by Defendants constitute costs incurred in "making copies" of their electronic materials.

2.    Whether the district court abused its discretion in taxing CBT with the costs incurred by Return Path associated with conducting prior art searches.

## STATEMENT OF THE CASE

Defendants concur with the Statement of the Case in CBT's Principal Brief.

## STATEMENT OF FACTS

The district court's findings make clear that the e-discovery costs awarded to Defendants generally, and Cisco in particular, were for the process of making copies of electronic data from its original sources (*i.e.*, on network servers and hard drives), and then preparing that electronic copy-set for further copying as a production subset.  JA9-13; *see also* JA1376-77; JA1378-87.  The district court found that the enormity of that effort (and the resulting costs) was the direct result of the electronic copying activities specifically demanded by CBT, and a fraction of what the costs would have been had Defendants instead made a paper production.  JA9-13.  Notably, the district court came to these conclusions only after examining the details of a "really nasty discovery dispute" regarding Cisco's document production efforts (JA9), which required the district court to "spen[d] an enormous amount of time reviewing all of the briefs and … review[] all of the

[147] exhibits, including reading every e-mail and every letter in the record." JA1380.[1]

## A.    Before Taxing Costs, The District Court Found That CBT Requested, "In Effect, Every Document in the Company"

CBT's "discovery requests in this case essentially called for every document at Cisco IronPort that deals with the accused products in this case, which meant, in effect, every document in the company." JA1380. Despite Cisco's best efforts to tailor the discovery to the pertinent issues and limit the costs (as explained further below), CBT made no "effort to narrow discovery" or "engage[] … in [any] meaningful discussions regarding the scope of discovery," and "displayed a certain stubborn recklessness in dismissing the Defendants' arguments as to 'fatal flaws' in CBT's infringement contentions." JA9.

For their part, Defendants provided written descriptions of their electronic data landscapes early and often, and attempted to engage CBT in a dialogue regarding the potentially enormous scope of electronic discovery in this case. *See*, *e.g.*, JA916-921; JA972-87; JA1401-08.   These discussions were especially important to Cisco because it operates in a nearly paperless environment and

---

[1]    As the district court further elaborated, this detailed review of the record was necessitated by CBT's unfounded accusations against Defendants:   "[CBT's] accusation that Defendant's counsel were 'mischaracterizing and misrepresenting the course of discovery' made it necessary for the Court to personally review the hundreds of pages of e-mails, letters and other documents submitted along with the lengthy briefs of the parties." JA1382.

CBT's failure to adequately identify the accused products in the Complaint meant that every document within Cisco's IronPort subsidiary could have potentially been within the broad scope of relevant documents to be collected and produced. *See*, *e.g.*, JA993-95.

To facilitate production of this "massive quantity of data," "the parties agreed that document production would be made in electronic format." JA11-12. In furtherance of that agreement, on February 5, 2008, Cisco sent CBT an eight-page letter providing additional information about Cisco's electronic document environment, including information regarding its development servers and corporate network. JA978; JA1041-49. Cisco also outlined the discovery costs it had already incurred and provided CBT a breakdown of the estimated costs that would be incurred for the additional document production efforts it demanded. *Id.* These efforts and costs included:

- Approximately $25,000 for "Hard drive captures" that "ran from 2 to 4 hours for each hard drive without a virtual machine" and "approximately 10 hours for each hard drive running a virtual machine"; collecting "approximately 740 gigabytes of data" from custodian hard drives; and collecting "approximately 110 gigabytes of network data associated with these custodians"; and

- Approximately $102,000 in costs for "processing, indexing, and setup of data collected in a review environment along with project management" efforts.

JA1044-45. These costs were separate and apart from the 30 hours worked by Cisco's own IT staff and the 150 hours of outside attorney and paralegal time

incurred related to "electronic data system investigation and management of electronic data collection" (*id.*), recovery of which is not sought here.

Cisco continued to regularly inform CBT of the extraordinary efforts it was undertaking to make electronic copies of its documents for production, including by regularly contacting CBT to negotiate the scope of CBT's electronic discovery requests and try to find a less burdensome path. As the district court found, these efforts were unsuccessful, as CBT forced Cisco to undertake a number of extreme actions to produce its electronic data, which ultimately included:

- "[C]ollect[ing] and preserv[ing] images of computer hard drives and network data associated with 35 custodians identified as most likely to have information sought by CBT, totaling approximately 1.2 terabytes of electronic data";

- Allowing CBT to determine the search terms to be used on the collected data, which resulted in a final list of 102 terms, and the production of 1.4 million documents;

- Running six "statistical previews" and search tests for CBT and providing reports to CBT "so that CBT could adjust its list of terms and other variables <u>before</u> the final search was run and the documents produced";

- Preserving an additional 50 Gigabytes of data based on targeted searches relating to subject matters identified by CBT in meet and confers regarding Cisco IronPort's response to CBT's document requests;

- Producing an additional 9,500 pages of documents (separate and apart from the 1.4 million documents resulting from the custodian data referenced above); and

- Serving an initial document production pursuant to Local Patent Rules 4.2 and 4.3, totaling approximately 1,418 pages, which provided information regarding the operation of the accused products and relevant prior art;

JA916-20; JA1381; *see also* JA1554; JA1557-60; JA1597-1600.

"[P]reserving images of computer hard drives and network data … totaling 1.2 terabytes of electronic data" and "an additional 50 Gigabytes of data based on targeted searches" necessarily requires "making copies" of that electronic data. As Cisco explained to the district court at one hearing, the 1.2 terabytes of digital data that was electronically copied from Cisco custodians was (at the time) the equivalent of 12% of the printed volume of the Library of Congress:

> And so we preserved all this data from 35 custodians. That translated to 1.2 terabytes of information. That's the approximate printed volume of 12 percent of the entire Library of Congress. That's the amount of data we captured. That's the capturing process.

JA1344. There is no dispute that all of this data had to be "captured" – *i.e.*, electronically copied – from custodian hard drives and networked servers in order to be further processed to make the production database in this case.

By mid-way through discovery (April 2008), the efforts to "capture" this electronic data – *i.e.*, to make a first electronic copy of the data from its original sources into a database from which an electronic production could be made – had resulted in the incurrence of approximately $400,000 in outside counsel and vendor fees, including approximately $167,000 in fees due to Cisco's e-discovery

vendor (Gallivan, Gallivan & O'Melia ("GGO")) and more than 800 attorney and paralegal hours. JA975. These costs continued to grow through the remainder of the litigation, such that, by the time the district court first granted Defendants' summary judgment, Cisco had incurred attorneys' fees reaching over $1,200,000 (JA6), and e-discovery vendor fees reaching $243,453.02 (JA11).

Ultimately, the district court found that Cisco's document production to CBT (*i.e.*, the result of the second stage of electronic copying from the database into the production set):

> included the production in native format of over 1.4 million documents that were produced as [the] result of electronic searching that was performed by Cisco IronPort based on 102 search terms that were ultimately selected by Plaintiff; six versions of source code with respect to what Cisco IronPort refers to as the 'message transfer agent' and source code related to the 'Bonded Sender Program'; paper documents; and additional data found on targeted searches arising from Plaintiff's document requests. These productions are in addition to an initial document production made by Cisco IronPort …, in which Cisco IronPort produced information regarding the operation of the accused products as well as prior art totaling approximately 1418 pages.

JA1381.[2]

## B.    GGO's Efforts Are The "21st Century Equivalent Of Making Copies"

As Cisco informed the district court, "GGO conducted highly specialized tasks to acquire, process, preserve, and track the voluminous amount of electronic

---

[2]    Incredibly, despite making Cisco produce its highly confidential source code, at an enormous expense, CBT never reviewed any of the six versions that Cisco collected and made available for inspection. JA1407-08; JA1546-47.

data that CBT requested in discovery." JA330. In the context of electronic discovery, to "acquire, process, preserve, track, and produce" means that copies of electronic materials are being made. This process of making copies of electronic materials requires:

> [F]orensically sound preservation of custodian computers; extraction of documents from multiple operating systems, corporate servers, and network shares while preserving meta-data; cataloging, extracting e-mail and attachments, and processing; compilation of keyword and meta-data indices for analysis and reporting as requested by the plaintiff; auditing and logging of files and ensuring compliance with Federal Rules; decryption and extraction of proprietary data; triage and advanced processing of files with errors; statistical and keyword analysis with related reporting; and compilation of native file production and load files to provide usable documents to plaintiff.

JA330. In short, these tasks are the "making" of electronic copies of files from their original locations where they exist only in digital form. As the district court held, "a careful review of the GGO invoices reveals that" these types of services "are highly technical" and "are the 21st Century equivalent of making copies." JA12 (citing *Cargill Inc. v. Progressive Dairy Solutions*, *Inc.*, No. CV-F-07-0349-LJO-SMS, 2008 WL 5135826, at *6 (E.D. Cal. Dec. 8, 2008) ("Progressive provides an explanation of the invoice – case management was done electronically because of the volume of documents …. Accordingly, this costs [*sic*] is recoverable.")).

## C.    Procedural History

### 1.    The District Court Held That Cisco Was Entitled To Recover The Requested E-Discovery Costs Following The First Summary Judgment Ruling

Following the district court's *Markman* order (JA187-JA208), CBT stipulated to non-infringement of the '114 Patent and the district court granted Defendants' motion for summary judgment as to invalidity of the '550 Patent (JA209-13).

As a prevailing party, Cisco submitted its Bill of Costs to the Clerk, which requested taxation of the following costs:

- $746.82 in "fees for service of summons and subpoena";

- $18,125.63 in "fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case";

- $4,473.10 in "fees for exemplification and copies of papers necessarily obtained for use in the case"; and

- $257,708.66 in "Other costs," which included (a) $243,453.02 in "Electronic Discovery Costs" to GGO; (b) $2,091.57 to Ivize for "Scan & OCR docs" and $628.82 to Paragon Legal Services for "Scanning & OCR costs" (both related to electronic production of hard copy documents); and (c) other fees for prior art searches and expert research.

JA229-33.  The Clerk taxed the entirety of these costs.  JA278.

CBT then submitted "over thirty-five pages of briefing objecting to something in every category of Cisco IronPort's bill of costs."  JA9.  The main objection related to the award of electronic discovery costs and the argument that

9

"identifying and collecting responsive documents in discovery is the kind of work that is typically performed by attorneys, and thus costs incurred in doing so are attorney's fees." JA287 (internal quotation omitted). Accordingly, much of the briefing focused on that issue.[3]

Upon reviewing CBT's objections to the requested costs, the district court found the vast majority to be an "incredible waste of time!" JA11. The district court did note, however, that CBT's objection to $243,453.02 in costs for Cisco's e-discovery vendor was "serious" and, therefore, "deserve[d] careful and deliberate consideration by the Court." JA11. As part of that review (and with its detailed knowledge of the cause and scope of the electronic production in this case), the district court undertook a "careful review of the GGO invoices" submitted by Cisco. The district court held that its review:

> [R]eveals that the services provided are not the type of services that attorneys or paralegals are trained for or are capable of providing. The services are highly technical. They are the 21st Century equivalent of making copies. The services are certainly necessary in the electronic age.

JA12-13 (internal citation omitted). In other words, "making copies of … materials" that only exist in electronic form requires the creation of an electronic copy of that digital data, and those costs are expressly recoverable.

---

[3]    In an effort to narrow the disputed issues, Cisco agreed to withdraw its request for a total of $12,743.09 in costs, thereby lowering its request to a total of $268,311.12. JA336-37.

In terms of the total amount of costs due, the district court further noted that CBT did not contest that "production in paper form of the 1.4 million documents plus 6 versions of source code would have cost far more than the fees sought for the e-discovery consultant." JA12. The district court, therefore, "overruled and denied" CBT's objections to the "taxation as costs of the e-discovery consultant's fees" and further overruled the remaining objections. JA13.

### 2. Following Remand And The Grant Of A New Summary Judgment, The District Court Affirmed Its Earlier Decision Regarding Costs

Following CBT's successful appeal of the district court's grant of summary judgment of invalidity of the '550 Patent on indefiniteness, Defendants again moved for summary judgment of non-infringement and invalidity based on certain prior art. The district court granted the motion as to non-infringement (JA619-41), entered judgment in Defendants' favor, and ordered them to "recover their costs of this action." JA642. Accordingly, Cisco once again sought the taxation of a portion of its costs incurred in defending the case. To facilitate and expedite review of the issues, Cisco resubmitted the same Bill of Costs (JA643-JA779), which were again awarded by the clerk (JA845). Return Path also submitted a Bill of Costs (JA780-JA812), which costs were also taxed against CBT. JA844.

CBT again contested the taxation of costs, but this time "challenge[d] only two aspects of Defendants' Bills of Costs": (1) the $243,453.02 that Cisco paid to

GGO and $33,858.51 that Return Path paid to Stroz Friedberg related to their respective e-discovery costs; and (2) Return Path's request for $1,887 in fees for prior art searching. JA853. CBT did not challenge the fees unrelated to Cisco's e-discovery costs (amounting to $24,858.10 in awardable costs), or the remaining costs sought by Return Path ($14,079.09). *Id.*

After another full round of briefing (JA846-67; JA868-91; JA892-94; JA895-JA910), the district court declined to revisit the costs issue, confirmed its earlier award, and taxed the full $268,311.12 requested by Cisco and $49,824.60 requested by Return Path. JA1.

## <u>SUMMARY OF ARGUMENT</u>

At CBT's request, Cisco electronically copied 1.2 terabytes of data – or the equivalent of 12% of the printed volume of the Library of Congress – from its original location on network servers and custodian hard drives, and then, again at CBT's direction, electronically culled that universe of electronic copies to create a production subset of over 1.4 million electronic documents (which translates to nearly 10 million pages) and six versions of its source code. After personally reading extensive briefing on Defendants' discovery efforts and literally hundreds of e-mails and letter exchanges among the parties about this process, and after carefully reviewing the resulting invoices, the district court made factual findings that control this appeal. Specifically, the district court found that, in order to make

copies of the electronic documents demanded by CBT, Cisco engaged the services of a third-party vendor, GGO, which provided "highly technical" services that are "not the type of services that attorneys or paralegals are trained for or are capable of providing." JA11. Consistent with the district court's holding, "the costs of producing a document electronically can be recoverable under section 1920(4)." *In re Ricoh Co.*, *Ltd. Patent Litig.*, 661 F.3d 1361, 1365 (Fed. Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (holding that $164,814.83 in costs "for converting computer data into a readable format in response to plaintiffs' discovery requests … are recoverable under 28 U.S.C. § 1920").

As in *Ricoh*, the costs that the district court found taxable were for making copies of electronic data from its original sources on network servers and custodian hard drives and then processing the copied data using a GGO database to create a second subset for production. Both stages of copying are unquestionably recoverable (under any facts), and the use of the database (between the first and second stages of copying) was a necessary vehicle for the document production. Accordingly, on this record, the costs associated with these activities are taxable, as the district court properly concluded. *In re Ricoh*, 661 F.3d at 1365.

CBT advances two primary arguments on appeal:

First, CBT proceeds as if there were some way to extract and capture electronic data from its original source *other than* making an electronic copy of it,

and then concludes that any invoice not using the specific term "copy" should be struck for unauthorized nomenclature. CBT's position should be rejected. The purpose and effect of the 2008 amendments to section 1920(4) – expanding the recoverable costs to include those costs associated with "making copies of any materials" – was to include the process of copying electronic material. *See*, *e.g.*, *In re Ricoh*, 661 F.3d at 1365 ("Congress amended section 1920(4) … to reflect the idea that electronically produced information is recoverable in court costs.") (internal citation omitted).

CBT's brief incorrectly presumes that only some unnamed *final* act of copying is recoverable, but that is wrong on several counts. The *initial* stage of copying electronic data is the process of capturing that data. Put another way, and as detailed in the invoices reviewed by the district court, the process of "preserving" or "extracting" electronic data means that a *copy* of the data is created from the existing network share drives and individual hard drives where the data resides. The record on this point is clear: the result of the initial stage of copying was an electronic copy-set of Cisco's electronic data that was 1.2 terabytes in size, a volume that the district court concluded was the direct result of CBT's demands and conduct. Nothing in the costs statute excludes the recovery of the costs associated with this first stage of electronic copying. To the contrary, the text of the amended statute (expanded to make recoverable "the costs of making copies of

any materials"), the legislative history to the 2008 amendments (noting that the changes "reflect the idea that electronically produced information is recoverable in court costs"), and the logic of the statute – *i.e.*, that "making copies" of electronic data is a necessary process of 21st Century discovery – dictate that it be included.

Once an initial electronic copy is made that contains all potentially relevant documents, a second production copy must also be made. To get to that subset, CBT demanded certain search terms be used to cull down the universe of documents to be produced and required Cisco to run a half dozen "previews" to determine the final scope of the documents returned. *See*, *e.g.*, JA973-74. The costs associated with these intermediate tasks – the electronic previewing to create the subset that CBT actually received – is similarly recoverable. *In re Ricoh*, 661 F.3d at 1365 (awarding costs incurred by "an electronic discovery company that provides secure document processing, review, production and hosting services"). Moreover, just as an invoice from paper copying would not be struck for the inclusion of descriptions such as "unclipping papers" or "placing originals back into boxes" or "discussing project with client," so too the necessary and adjacent activities of electronic copying are likewise recoverable as part of the process of "making copies." And, of course, none of the taxed costs include the hundreds of thousands of dollars of attorney and paralegal time that accompanied these actions.

Second, CBT argues that the district court's decision would "break the symmetry" between the recoverability of costs incurred in paper and electronic productions "by permitting taxation of electronic discovery but not paper discovery costs" in a manner that would allegedly "fundamentally change the taxation of costs" and potentially impose "enormous liability on whichever party ultimately loses a case." (Br. at 22-23.)  This argument also fails.

As a threshold matter, the district court specifically found that the enormity of the production effort was the direct result of CBT's demands.  JA1380.  CBT should not be allowed to bootstrap its own sanctionable conduct – which dramatically increased the scope and volume of discovery in this case, and in turn drove up the costs of electronic copying – into a justification to be relieved altogether from taxation of copying costs.

Of equal importance, the district court noted that CBT did not dispute that "production in paper form of the 1.4 million documents plus 6 versions of source code *would have cost far more than the fees sought for the e-discovery consultant.*"  JA12 (emphasis added).  In general, conservatively assuming that an average document is 7 pages, then the electronic production of 1.4 million documents in this case was the equivalent of 9.8 million pages of paper.  The $243,453.02 of costs taxed for these electronic copies would translate to a charge of approximately 2 ½ cents per page, an amount that is far less than standard

recoverable rates for paper copies (which are routinely in the range of 10-20 cents per page). And there is no dispute that the equivalent paper costs – *i.e.*, the much higher costs for a paper production of exactly the same magnitude – would have been fully recoverable, without regard to any issues of "symmetry." For this reason, courts repeatedly have recognized that e-discovery is oftentimes much less expensive than an equivalent paper production and is recoverable. *See*, *e.g.*, *Chenault v. Dorel Indus., Inc.*, No. A-08-CA-354-SS, 2010 WL 3064007, at *4 (W.D. Tex. Aug. 2, 2010) (taxing $27,171 in costs associated with "an electronic database" and noting that production of 800,000 pages of emails in paper form would have cost approximately $120,000).

Because the district court did not abuse its discretion in awarding these costs to Defendants, its decision should be affirmed.

## <u>STANDARD OF REVIEW</u>

This Court applies regional circuit law in interpreting 28 U.S.C. § 1920, which in this case is Eleventh Circuit law. *In re Ricoh*, 661 F.3d at 1364. The Eleventh Circuit "will not disturb a costs award in the absence of a clear abuse of discretion." *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002) (holding that, "lest litigation costs be unnecessarily increased," expedited transcripts were necessary in the case given its length and complexity and, therefore, the district did not clearly abuse its discretion in awarding these

costs).   There is a strong presumption that the prevailing party will be awarded

costs.  *Arcadian Fertilizer*, *L.P. v. MPW Indus. Servs.*, *Inc.*, 249 F.3d 1293, 1296

(11th Cir. 2001).

## **ARGUMENT**

## I.    **Defendants Are Entitled To Recover Their E-Discovery Costs**

Federal Rule of Civil Procedure 54(d) provides that "costs – other than

attorneys' fees – should be allowed to the prevailing party" unless a federal statute,

federal rule, or court order provides otherwise.  Indeed, "Rule 54(d)(1) codifies a

venerable presumption that prevailing parties are entitled to costs."  *Marx v. Gen.*

*Revenue Corp.*, 133 S. Ct. 1166, 1172 (2013); *see also Arcadian Fertilizer*, *L.P. v.*

*MPW Indus. Servs.*, *Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001); *Manor Healthcare*

*Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991).   In other words, "the

language of the rule reasonably bears intendment that the prevailing party is prima

facie entitled to costs and it is incumbent on the losing party to overcome that

presumption since denial of costs is in the nature of a penalty for some defection

on his part in the course of the litigation."  *Gilchrist v. Bolger*, 733 F.2d 1551,

1557 (11th Cir. 1984) (internal quotation omitted).

The inquiry of whether specific activities fall within the statute is necessarily

fact-based.   Accordingly, the district court carefully reviewed the record and

awarded Defendants their costs relating to their e-discovery activities, which costs

were necessarily incurred in responding to the unreasonably broad discovery propounded by CBT.  These costs were awarded under 28 U.S.C. § 1920(4) as the "21st Century equivalent of making copies."  JA11.  The district court's taxation of modern-day duplication costs directly follows Congress' directive in ensuring that the Federal Judiciary "keep[s] up with the changes and challenges of the 21st century."  154 Cong. Rec. S9897, S9898 (statement of Sen. Leahy).

In taxing these costs, the district court specifically found that:

- the scope of Cisco's production was the direct result of the specific requests made by CBT, and CBT "made no effort to narrow discovery and engaged in no meaningful discussions regarding the scope of discovery" (JA9);

- the parties had agreed to electronic production, and "production in paper … would have cost far more than the fees sought for the e-discovery consultant" (JA9);

- the e-discovery vendor provided "highly technical" services that are "not the type of services that attorneys or paralegals are trained for or capable of providing" (JA12);

- these services are "certainly necessary in the electronic age" (JA13); and

- "[t]axation of these costs will encourage litigants to exercise restraint in burdening the opposing party with the huge cost of unlimited demands for electronic discovery" (JA13).

This appeal necessarily turns on these factual findings, because the recoverability of individual costs in "[e]very case is fact specific" and needs to be analyzed according to its particular circumstances, including by recognizing that

"what the parties ask for and agree to regarding the form of production affects not only the utility of the production but also the costs attributable to it (and hence the taxable costs under section 1920(4)." *Plantronics*, *Inc. v. Aliph*, *Inc.*, No. C 09-01714 WHA (LB), 2012 WL 6761576, at *15 (N.D. Cal. Oct. 23, 2012); *see also In re Online DVD Rental Antitrust Litig.*, No. M 09-2029 PJH, 2012 WL 1414111, at *1 (N.D. Cal. Apr. 20, 2012) (awarding $710,194.23 in costs and holding that "broad construction of section 1920 with respect to electronic discovery production costs – under the facts of this case – is appropriate").

### A. The District Court Has The Statutory Authority To Award The Specific Costs At Issue In This Appeal

Section 1920(4) allows for the taxation of costs associated with "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). This Court has held that certain preparatory and ancillary tasks related to the process of "making copies" of electronic data can be recovered. Specifically, "the costs of an electronic document database under subsection 4" are recoverable. *In re Ricoh*, 661 F.3d at 1364-66. Thus, costs incurred by an e-discovery vendor that is responsible for "secure document processing, review, production and hosting services" throughout the course of a litigation are taxable when such a database is "used as a means of document production in th[e] case." *Id.* at 1365. This holding is perfectly in line with the statutory text and legislative intent behind recent

20

amendments to section 1920(4) and fully supports the district court's decision in this case.

Here, by holding that the specific e-discovery costs on this record are recoverable, the district court ensured that Defendants were able to recover at least a small fraction of the costs they incurred in responding to discovery and producing their electronic documents, just as they would have been entitled to do in a pre-digital era. *See Rundus v. City of Dallas*, No. 3-06-CV-1823-BD, 2009 WL 3614519, at *3 (N.D. Tex. Nov. 2, 2009) ("[A]s the prevailing parties, SFOT and the City are entitled to recover the cost of producing one set of documents, ***in whatever form***, to plaintiff during discovery."). Any other result would prevent parties from recovering those costs associated with a document production simply because their documents are maintained electronically, rather than in hard copy form.

### 1. The 2008 Statutory Amendments Confirm That Costs Incurred In Making Copies Of Electronically Stored Information Are Recoverable

In 2008, Congress amended Section 1920(4) by striking the phrase "***copies of paper***," and inserting in its place "the costs of ***making copies of any materials***"

(emphasis added).  Pub. L. No. 110-406 § 6(2).[4]  Representative Zoe Lofgren of California, a member of the Courts and Intellectual Property House Subcommittees, explained that updates in the statute "include making electronically produced information coverable in court costs."  154 Cong. Rec. H10270, H10271 (daily ed. Sept. 27, 2008) (statement of Rep. Lofgren).  Senator Leahy further noted that the bill was intended "to keep up with the changes and challenges of the 21st century."  154 Cong. Rec. S9897, S9898 (daily ed. Sept. 27, 2008) (statement of Sen. Leahy).

Thus, when CBT repeatedly states in its principal brief that, after the amendment, "all copying, whether paper or electronic" must be treated alike, it is only acknowledging half the story.  (Br. at 22; *see also id.* at 12 ("Congress recently amended Section 1920(4) to clarify that taxable copies are not limited to paper copies.").)  The full story is that, in the 21st Century, when the vast majority of documents already exist in an electronic form, the statutory amendment

---

[4]    The pre-amendment statute permitted the court to tax:

"(4) Fees for exemplification and ***copies of papers*** necessarily obtained for use in the case."

28 U.S.C. § 1920(4) (2007) (emphasis added).  Post-amendment, the statute allows for the recovery of:

"(4) Fees for exemplification and ***the costs of making copies of any materials where the copies are*** necessarily obtained for use in the case."

28 U.S.C. § 1920(4) (2013) (emphasis added).

confirms the correctness of the district court's decision:  by broadening the category of recoverable costs to include the acts associated with "**making** copies of **any materials**," Congress clearly determined that the costs associated with making copies of an electronic document for production in discovery are recoverable.

This is the same holding that this Court reached in *Ricoh*.  In that case, the appellant contended that the district court "erred in awarding $234,702.43 to Synopsys for Stratify, a third-party electronic database service," which provided "secure document processing, review, production and hosting services" throughout the course of the litigation.  *In re Ricoh*, 661 F.3d at 1364.  In reviewing the award, this Court held that the "district court did not abuse its discretion in concluding that … costs associated with Stratify were taxable because 'the Stratify database was used as a means of document production in this case.'"  *Id.* at 1365.

To reach this conclusion – *i.e.*, that the costs associated with the electronic database were recoverable (absent the parties' controlling agreement to share the database costs) – the Court first noted that, "[i]n the era of electronic discovery, courts have held that electronic production of documents can constitute 'exemplification' or 'making copies' under section 1920(4)."  *Id.* (citing *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 420 (6th Cir. 2005)).  The Court also made a special note of Congress' 2008 amendment to the statute, as discussed more fully above.

Contrary to the arguments made by the losing party in that case (and echoed by CBT here), the Court did "not consider any of the Stratify database costs to fall into the unrecoverable category of 'intellectual efforts.'" *Id.* Indeed, a review of the briefing on the costs issue before the district court in *Ricoh* bears a striking resemblance to the facts of the present case. For example, in that case, due to the plaintiff's unyielding demands for email that was minimally relevant, the defendants were forced to produce over 100 gigabytes of email via the database, which included over 1.8 million documents. *See* Synopsys's and Customer Defendants' Reply To Motion For Review Of Clerk's Taxation Of Costs (D.I. 747), at 3, *In re Ricoh Co., Ltd. Patent Litig.*, No. C 03-2289 JW (N.D. Cal. Sept. 20, 2010). This is a close comparison to Cisco's production of over 1.4 million electronic documents in this case. And, as the *Ricoh* district court noted, "it is uncontested that the Stratify database was used as a means of document production in this case." Order Denying Ricoh's Motion for Stay; Granting in Part and Denying in Part Ricoh's Motion for Review of Costs; Granting Synopsys' Motion for Review of Costs; Staying Payment of Costs (D.I. 753), at 13, *In re Ricoh Co., Ltd. Patent Litig.*, No. C 03-2289 JW (N.D. Cal. Sept. 29, 2010). That same electronic document production process was described in detail by the Orders in this case. JA1376-77; JA1378-87; JA2-13.

By holding that the costs associated with setting up and maintaining an electronic database – which is used exclusively for the production of documents requested in discovery – are recoverable, this Court was recognizing the realities of document productions in the 21st Century.  As another court recently held, "the reproduction costs defendants incurred in collecting, reviewing, and preparing client documents for production were necessary expenditures made for the purpose of advancing the investigation and discovery phases of the action.  As such, they are properly taxable." *Parrish v. Manatt, Phelps & Phillips, LLP*, No. C 10-03200 WHA, 2011 WL 1362112, at *2 (N.D. Cal. Apr. 11, 2011) (awarding $22,667.28 in costs incurred by electronic discovery vendors);[5] *see also Tibble v. Edison Int'l*, No. CV 07-5359 SVW (AGRx), 2011 WL 3759927, at *6-*8 (C.D. Cal. Aug. 22, 2011) (e-discovery costs in the amount of $407,277.30 were reasonable where the costs were for "utilizing the expertise of computer technicians in unearthing the vast amount of computerized data sought by Plaintiffs in discovery" and, therefore, were recoverable under section 1920(4)); *Chenault*, 2010 WL 3064007, at *4 ($27,171.88 in "other costs" for an electronic database were recoverable, where

---

[5]    *Parrish* provides a "full-throated endorsement of e-discovery cost recovery under 28 U.S.C. § 1920(4)."    Ronni Solomon and Andrew H. Walcoff, *E-Discovery Cost-Shifting*, The Metropolitan Corporate Counsel, Oct. 2011, *available at* http://www.kslaw.com/imageserver/KSPublic/library/publication/2011articles/10-11MCCSolomonWalcoff.pdf.

prevailing party produced 800,000 pages of emails in electronic format "in lieu of extremely costly paper production").

Finally, CBT argues that the district court's exercise of its authority to shift some costs in this case (for a privilege review) *during* the litigation – *i.e.*, before any party had prevailed – proves that Defendants now should be deprived of their statutory costs that can only be awarded *after* prevailing. (Br. at 24.) Again, CBT has it backwards; the fact that its behavior was so far out-of-bounds that cost shifting was necessary even *before* Defendants prevailed only heightens the need for deference to the district court's evaluation of the facts in this record.

### 2. The Specific Services At Issue Were For The Making Of The Digital Duplicates Of Defendants' Electronic Documents

CBT argues that the district court improperly awarded Defendants costs leading up to the production of documents, instead of limiting recovery to "include only those tasks that involve actually duplicating documents." (Br. at 15.) For four reasons, this argument ignores the broader costs associated with "making copies" of electronic materials, *i.e.*, the same realities that led Congress to amend the statute.

First, section 1920(4) allows for the taxation of costs associated with the process of "making copies of any materials where the copies are necessarily obtained for use in the case." There is no question that the copies here were

26

"necessarily obtained for use in the case," as the district court found that "CBT requested, and Cisco IronPort produced, a massive quantity of data."  JA11. Indeed, the original stage of "making copies" resulted in a copy set that was 12% of the Library of Congress, an enormous amount that was the direct result of CBT's requests.  At CBT's request, instead of hitting the "print" button on such a massive volume of data, Cisco engaged in an iterative process to run search terms (selected by CBT) through the database to preview and then ultimately copy a subset of the database for production.  In the Eleventh Circuit, "'[c]opies attributable to discovery' are a category of copies recoverable under § 1920(4)." *U.S. Equal Emp't Opportunity Comm'n v. W&O, Inc.*, 213 F.3d 600, 623 (11th Cir. 2000).

Second, using the test cited by CBT in its objections to the district court, the types of services provided by GGO and Stroz Friedberg "are not the types of services that attorneys or paralegals are trained for or capable of providing."  JA11. In other words, they are not unrecoverable "intellectual efforts."  For example, CBT argues that various project management tasks are unrecoverable.  ((Br. at 26) (alleging that "Defendants' consultants frequently billed time for meetings, teleconferences, discussions, correspondence, and similar activities").)  But these "project management" related tasks are a necessary component to the electronic production process and are, therefore, recoverable.  *Jardin v. DATAllegro, Inc.*,

No. 08-CV-1462-IEG (WVG), 2011 WL 4835742, at *9 (S.D. Cal. Oct. 12, 2011) ("Here, the project manager did not review documents or contribute to any strategic decision-making …. Because the project manager's duties were limited to the physical production of data, the related costs are recoverable."). They are not akin to the paralegal's efforts of "gathering … documents as a prelude to duplication" in *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 n. 5 (11th Cir. 1982).[6] At most, it appears that CBT's complaint is that the invoices provide too much detail; all of these activities were part of the process of making electronic copies and processing the data for production through a database.

---

[6]    Apart from being decided more than 30 years ago – in an era before electronic databases and the 2008 statutory amendment that was necessitated by these advances in document production practices – *Allen* is similarly inapposite because it merely held that paralegal expenses are not recoverable as a part of section 1920, but instead are recoverable only as an award for attorneys' fees and expenses.    665 F.2d at 697 & n. 5.    Conversely, the services provided by Defendants' e-discovery vendors were "not the type of services that attorneys or paralegals are trained for or are capable of providing." JA11. That *Allen* does not inform the situation currently before this Court is confirmed by the fact that a Westlaw search reveals that, in the 30 years since it issued, only a single district court within the 11th Circuit has cited to it in a published opinion for this "prelude to duplication" theory, and then only to prohibit costs incurred to binder, label, and bates number certain documents. *See Durden v. Citicorp Trust Bank*, *FSB*, No. 3:07-cv-974-J-34JRK, 2010 WL 2105921, at *4 (M.D. Fla. Apr. 26, 2010) ("While the copying may have been necessary, the costs Defendant seeks extend beyond mere copying.    For example, Defendant not only seeks copying costs, but also seeks binder costs, labeling costs, and costs for bates numbering documents.").

<u>Third</u>, to the extent CBT's objections are directed toward the opposite argument – *i.e.*, that the invoices do not properly set forth the actions undertaken by the e-discovery vendors – these arguments similarly fail. *See*, *e.g.*, *Plantronics*, 2012 WL 6761576, at *17 n. 6 ("The court disagrees that these terms are too vague or high-level. … [T]hese are standard processes familiar to anyone who has engaged in any ESI discovery. The court appreciates that it is technical jargon to the uninitiated, but it is not to individuals with sufficient technical knowledge."). The district court's decision was based on a thorough review and does not present any abuse of discretion.

<u>Fourth</u>, any justification for excluding the initial act of copying (here, the electronic copying of 1.2 terabytes of data from its original source) would be illogical and would defy the words of the amendment. For example, even the Third Circuit's interpretation of section 1920(4) set forth in *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012), acknowledges that the costs associated with "the scanning of [hard copy] documents to create digital duplicates are generally recognized as the taxable 'making copies of material.'" 674 F.3d at 167 (citing, *inter alia*, *BDT Prods. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 420 (6th Cir. 2005) ("Electronic scanning and imaging could be interpreted as 'exemplification and copies of papers.'")).

29

Having agreed on that predicate, the proposition that the amended statute draws a line and excludes copying costs when the original material is already in electronic form (*e.g.*, in this case, where the 1.2 terabytes of data existed in electronic form and had to be copied to be accessible for production) makes no sense. Consistent with the statute as amended, when the documents already exist in electronic form, the process of "making copies" of the electronic "material" requires a process different than scanning the document and performing optical character recognition ("OCR"). Instead, as was done here, it is necessary to engage in a highly technical, multi-step process to capture and process (*i.e.*, copy) the documents so they can be produced in an intelligible format. This process of making copies necessarily included preserving and collecting hard drives and network share drives, *i.e.*, making a first electronic copy of the data, and then (per CBT's instructions) taking the necessary steps to make what ultimately becomes a second production copy based on search terms.

Accordingly, and contrary to the Third Circuit's reasoning in *Race Tires*, determining whether the costs incurred in "making copies" of electronic materials are recoverable is not as simple as analogizing to a paper production and determining when the final act of "copying" arguably occurs. *See* 674 F.3d at 169. The statute was amended to allow for the costs associated with "making copies of any materials" precisely to avoid the antiquated restrictions imposed by paper-

based guidelines. For example, as the Third Circuit rhetorically stated, "[i]t may be that extensive 'processing' of ESI is essential to make a comprehensive and intelligible production." *Id.*; *see also id.* at 167 (noting that "the conversion of native files to TIFF (the agreed-upon default format for production of ESI) … [is] generally recognized as the taxable 'making copies of material'") (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (costs of "converting computer data into a readable format in response to plaintiffs' discovery requests are recoverable under 28 U.S.C. § 1920")).[7] But, contrary to the Third Circuit's ultimate holding, this "processing" is not equivalent to the "process employed in the pre-digital era to produce documents in complex litigation" (*id.* at 169); instead, the processing requires the creation of electronic copies.[8] *See, e.g.*, *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, No. C 09-5939 PJH, 2012 WL

---

[7]    Here, production was done natively because producing the 1.4 million documents in TIFF format would have been "cost prohibitive." JA1558-60. For example, GGO estimated that to reproduce just the "custodian data in TIFF format" would have cost an additional $226,700. JA1560; JA1599. Had Cisco actually incurred these costs as CBT requested, they, too, would have been recoverable, even under the Third Circuit's analysis. *Race Tires*, 674 F.3d at 167 (affirming the taxation of costs for "scanning and TIFF conversion").

[8]    Although the Third Circuit appeared to undertake a detailed analysis of the terms in the amended statute (*see Race Tires*, 674 F.3d at 164-67 (reviewing the definition of "exemplification" and the "noun 'copy'"), it did not address the addition of the term "making" in the statutory text. Put another way, in addition to the elimination of any paper-based restrictions, Congress also amended the statute to include the "costs of ***making*** copies," further broadening the category of recoverable costs, and *Race Tires* does not address this aspect of the amendment.

31

1610979, at *4 (N.D. Cal. May 8, 2012) (taking "note" of *Race Tires*, but holding "under the facts of this case," "work performed by technicians" in connection with e-discovery "was necessary to convert computer data into a readable format" and, therefore, was recoverable as "an essential component of the cost of reproducing disclosure or formal discovery documents used in the case") (internal quotations omitted).

Here, the district court conducted "[a] careful review of the GGO invoices" and held that the "processing" of electronic documents requires "the type of services that attorneys or paralegals are [not] trained for or are capable of providing." JA12. Put simply, the steps undertaken by Defendants' e-discovery vendors were not a "prelude to duplication." They were instead the necessary and required components of a multi-step process of making copies of documents already in electronic form. Accordingly, the costs incurred in creating these digital duplicates are recoverable under section 1920(4) as the "21st Century equivalent of making copies." JA12.

## B.    A Paper Production Would Have Resulted In Costs In Excess Of $1 Million

CBT's position on "symmetry" is backwards. A holding that the complete process of making electronic copies is not recoverable would break the "symmetry" between the recoverability of the costs incurred in paper productions and the costs incurred in producing electronic documents. It would be an odd

result to hold that $1 million in costs would have been recoverable in this case had the production been in paper, but that $243,000 is not recoverable because the production was electronic. It would be equally odd to hold that the costs associated with the process of scanning and OCR-ing a hard copy document to produce it electronically are recoverable, but that the costs incurred in imaging a hard drive or network drive and undertaking the necessary processing tasks to make a digital duplicate of that same document (which already exists in electronic form) are not. There is simply no textual or policy reason to read the costs statute so narrowly or incongruously, particularly after Congress has broadly ensured that the costs associated with "making copies of any materials" are recoverable.

Cisco produced in excess of 1.4 million documents in response to CBT's discovery demands. The vast majority of these were maintained in an electronic format and, therefore, copies of these documents were produced with the assistance of GGO. Had these same documents existed instead in paper form, Cisco would have been forced to copy the documents (at a cost between $0.10/page and $0.20/page) and produce them to CBT. As the district court found, copying these documents for production to CBT at these rates would have resulted in costs far in excess of the approximately $243,000 now sought. JA12.

For example, even conservatively assuming only 7 pages per document, and conservatively using a preferred rate of $0.10/page, the cost would have been

approximately $980,000 to copy these documents for production. CBT has never contested that Cisco would have been entitled to recover this amount – which is four times greater than the fees now sought by Cisco – had Cisco made a paper production. *See*, *e.g.*, JA12 ("Cisco IronPort has asserted – without contradiction – that production in paper form … would have cost far more than the fees sought for the e-discovery consultant"); JA874 (Cisco's brief noting that "the paper equivalent of this e-production would have cost far more … and unquestionably would have been recoverable"); JA905 (CBT calling Cisco's "reliance on the cost of a hypothetical 'paper equivalent of this e-production'" as "beside the point").

Nevertheless, CBT argues on appeal that although "nothing in the costs statute distinguishes between traditional paper discovery and electronic discovery" (Br. at 12) – which means Cisco would be entitled to recover approximately $1 million in copying costs had it made a paper production – permitting Cisco to recover its e-discovery costs would "radically alter" the costs statute and "fundamentally change the taxation of costs from covering only 'minor, incidental expenses' (consistent with the American Rule) to imposing potentially enormous liability on whichever party ultimately loses a case." (Br. at 23.) But CBT has no response to the district court's conclusion that the amount sought by Cisco is a fraction of the costs of a paper production that (as CBT must acknowledge) would have been fully taxable.

Moreover, having propounded discovery requests in this case that "essentially called for every document at Cisco that deals with the accused products in this case, which meant, in effect, every document in the company" (JA1380), and having the benefit of lower costs incurred by virtue of Cisco's use of GGO's electronic database (and native production), CBT should not now be heard to complain that those costs are nevertheless too high. *See Chenault*, 2010 WL 3064007 (awarding $27,171.88 in costs for an electronic database where the losing side demanded the documents in discovery and it would have cost approximately $120,000 to produce the same documents in printed form); *see also Neutrino Dev. Corp. v. Sonosite, Inc.*, Civil Action No. H-01-2484, 2007 WL 998636, at *4 (S.D. Tex. Mar. 30, 2007) (overruling objection related to costs associated with electronic production due in part because "the electronic data was produced in lieu of costly paper production" and the "electronic production in response to Plaintiff's discovery requests falls within costs recoverable for 'fees and disbursements for printing'").

The fact that the costs associated with a paper production would far outweigh the actual costs of Cisco's e-discovery vendor also belies CBT's implicit argument that the costs recoverable under section 1920 are somehow capped and that, therefore, any recovery of costs that exceed some unstated threshold are *de facto* unrecoverable. It is undisputed that the costs sought to be recovered by

Defendants are but a small fraction of their total costs to defend this litigation, which run to nearly $2 million in attorneys' fees and expenses. Thus, comparatively speaking, the costs sought here by Defendants are indeed limited to "relatively minor, incidental expenses." *Taniguchi v. Kan Pac. Saipan*, *Ltd.*, 132 S. Ct. 1997, 2006 (2012).[9]

Moreover, while it may be true that the recoverable costs delineated in section 1920 "are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators," *id.*, it is also true, as noted by Justice Ginsburg in the *Taniguchi* dissent, that the "tab for unquestionably allowable costs … may run high." *Id.* at 2011 n. 4 (citing, *inter alia*, *In re Ricoh Co.*, *Ltd. Patent Litig.*, No. C 03-2289 JW, 2012 WL 1499191, *6 (N.D. Cal. Apr. 26, 2012) (awarding $675,154.75 in taxable costs, including $440,000 "for copying costs related to producing documents requested by Ricoh").[10] *See also Hecker* (awarding costs of $164,814.43, and noting that "this is a substantial amount," but refusing to hold that the district court abused its discretion in awarding costs

---

[9]    *Taniguchi* addressed whether "'compensation of interpreters' [as found in 19 U.S.C. § 1920(6)] covers the cost of translating documents." 132 S. Ct. 2000. The Court looked to the ordinary meaning of "interpreters" and concluded that such costs were "limited to the cost of oral translation." *Id.* This holding is inapplicable to the issues presented here, which relate to the meaning of statutory text that was amended in 2008 to broaden the scope of recoverable costs.

[10]    This is the district court opinion resulting from this Court's remand order in the same case.

related to "converting computer data into a readable format in response to plaintiffs' discovery requests"); *Lockheed Martin Idaho Techs. Co. v. Lockheed Martin Advanced Envtl. Sys., Inc.*, No. CV-98-316-E-BLW, 2006 WL 2095876, at *2 (D. Idaho July 27, 2006) ($4.6 million in costs for creating a litigation database were recoverable under section 1920(4) because the database "was necessary due to the extreme complexity of this case and the millions of documents that had to be organized").

In sum, CBT's argument ignores the fact that someone has to pay these "potentially enormous" costs, and the Eleventh Circuit has held that "denial of costs is in the nature of a penalty for some defection on [the prevailing party's] part in the course of the litigation." *Gilchrist v. Bolger*, 733 F.2d 1551, 1557 (11th Cir. 1984). CBT has never articulated any such "defect[]" in Defendants' case; accordingly, these costs are taxable against CBT.

## II. Return Path Is Entitled To Recover Those Costs Associated With Prior Art Searching

CBT separately contests the district court's award of $1,887.00 in expenses for "Prior Art Searches." These costs are recoverable. *See, e.g.*, *Neutrino*, 2007 WL 998636, at *3 (affirming taxation of costs amounting to $143,601.71, including $115,205.21 "for copies produced from outside vendors for patents, non-patent prior art, and documents produced, among other things").

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should affirm the district court's taxation of costs.

Respectfully submitted on this 11th day of April, 2013.

DUANE MORRIS LLP

By:    /s/ L. Norwood Jameson
       L. Norwood Jameson
       Matthew C. Gaudet
       John R. Gibson

       Duane Morris LLP
       1075 Peachtree Street, NE, Suite 2000
       Atlanta, GA 30309
       Phone: 404-253-6900
       Fax: 404-253-6901

       *Attorneys for Defendant-Appellee*
       *Cisco IronPort Systems, LLC*

BLANK ROME LLP

By:    /s/ Kenneth L. Bressler
       Kenneth L. Bressler
       405 Lexington Avenue
       New York, New York 10174
       Phone: 212-885-5203
       Fax: 917-332-3740

       *Attorney for Defendant-Appellee*
       *Return Path, Inc.*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on April 11, 2013, copies of the forgoing **RESPONSE BRIEF OF DEFENDANTS CISCO IRONPORT SYSTEMS, LLC AND RETURN PATH, INC.** were submitted to the Court's CM/ECF system, which will automatically serve electronic copies upon the following counsel of record.

Adam Conrad
King & Spalding LLP
100 N. Tryon St
Charlotte, NC 28202
Direct: 704-503-2600
Fax: 704-503-2622
Email: aconrad@kslaw.com

Bruce William Baber
Russell Blythe
King & Spalding LLP
1180 Peachtree Street, NE
Suite 2800
Atlanta, GA 30309
Direct: 404-572-5826
Fax: 404-572-5100
Email: bbaber@kslaw.com

Daryl Joseffer
King & Spalding LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
Direct: 202-737-0500
Fax: 202-626-3737
Email: djoseffer@kslaw.com

Kenneth L. Bressler
Blank Rome LLP
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
Direct: 212-885-5000
Fax: 212-885-5001
Email: kbressler@blankrome.com

Natasha Horne Moffitt
King & Spalding LLP
1180 Peachtree Street, NE
Suite 2800
Atlanta, GA 30309
Direct: 404-572-2783
Fax: 404-572-5100
Email: nmoffitt@kslaw.com

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the **RESPONSE BRIEF OF DEFENDANTS CISCO IRONPORT SYSTEMS, LLC AND RETURN PATH, INC** will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

DUANE MORRIS LLP

By:    /s/ L. Norwood Jameson
       L. Norwood Jameson

       Duane Morris LLP
       1075 Peachtree Street NE, Suite 2000
       Atlanta, GA 30309
       Phone: 404-253-6900
       Fax: 404-253-6901

       *Attorney for Defendant-Appellee*
       *Cisco IronPort Systems, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of appellate Procedure 32(a)(7)(C), the undersigned certifies that the foregoing brief, exclusive of the exempted portions as provided in Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b), contains 8,870 words and therefore complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i).

Date:  April 11, 2013.                By:    <u>/s/ L. Norwood Jameson</u>
                                              L. Norwood Jameson